Case number 22-1763, American Society for Testing and Materials et al, Evalance v. Public.Resource.Org, Inc. Mr. Klaus for the Evalance, Ms. McSherry for the Appellee. Mr. Klaus, good morning. Thank you, Judge Henderson. Good morning. May it please the court. The district court's order permits public resource to engage in the essentially verbatim copying and unlimited internet distribution of more than 200 different works that plaintiffs properly copyrighted and that Congress, governmental agencies, and private parties alike relied on and encouraged to promote public safety, save the government and taxpayers from having to bear the costs of development, and support the efficient operation of wide swaths of the economy. The district court reached that sweeping result as to 185 different works by systematically misapplying the clear guidance and specific instructions that this court provided when it demanded for reconsideration of public resources affirmative defense of fair use. As to the 32 works where the district court held public resource abuse was not fair, the district court abused its discretion by declining to enjoin public resource based on the speculative possibility that one or more of the works might one day be incorporated by reference. It was error to grant public resources somewhere in judgment motion and not enjoin it. The district court's order invites public resource and anyone similarly situated to it to copy and distribute any IDR work without limitation. No copyright owner would long survive the unrestricted and widespread copying of the type public resources engaged in, but that is where district court's order leaves it. Your honor, there's been a substantial amount of briefing and paper in this case I know. I would propose to focus on three areas, although obviously subject to the court's questions. First involves the first three fair use factors as set forth in this court's ASTM 2 decision, and then I'd like to spend some time on the fourth factor for market harm, and then to talk about public resources alternative argument or affirmant based on Georgia versus public resource, which we think is inapplicable by its terms. So, to start, your honors, with respect to the first three fair use factors, this court remanded to the district court with quite specific instructions, a quite detailed set of issues that the district court was to consider as to each of the standards, and the evaluation of the particular legal status and to weigh the factors as CROs use as applied to each. And with respect... The district court went standard by standard in excruciating detail. Judge Katsas, the district court did go standard by standard, and the appendix is quite lengthy. I agree with that. But what the district court did not do was to grapple with the specific instructions that the court gave as to each of the first three fair use factors. For each of these paragraphs in the appendix... Well, the first thing the district court did, tell me if you disagree with this, but she solved the problem of copying standards or portions of standards that hadn't been incorporated into law, right? You want on 32 of those and half... There was a grouping at the end of the so-called category. So really what we're talking about is the non-commercial dissemination of standards that have been incorporated into law. That the standards... So Judge Katsas, the standards have been incorporated, but whether the standards actually in total impose binding legal obligation, which is the question that the court... I apologize. No, no, no. Go ahead. Is the question that the court asked the district court to consider. And essentially the... Maybe yes. We flagged that as a relevant consideration for fair use. But we didn't really say that background material or safe harbor provisions could not be fair use. That is correct. But what the court did say was that the justification for the copy might be quite different where what you have is something that did not impose a binding legal obligation. And what public resource did... I don't have a copy of one of the standards, but if you'll forgive me for using this as an example. They essentially copied and posted everything covered to cover. Everything that had been incorporated. Well, that's it. That is actually... We actually dispute that with respect to a number of the incorporation with respect to some of these standards did not incorporate the entire document. Let me give you an example. So public resource says at page six of the red brief, they say when Congress or with an agency wants to incorporate the entirety of the standard, it just doesn't say anything. When it wants to incorporate a specific portion, incorporates a specific portion. And they give as the example a regulation from the Pipeline and Hazardous Materials Safety Administration, 49 CFR 192.7. And the... In the joint appendix, the statement of facts, what public resource said is if you look at EPA 70 2008, we're done. Congratulations. You've found a standard that's been incorporated in full. But in fact, when you ran through what 49 CFR 192.7 subsection four actually says is that the standards are approved for two further subsections. And when you go to those further subsections, one of them says 192.163E. There's electrical facilities. Electrical equipment and wiring installed in compressor stations must conform to NFPA 70 so far as that code is applicable. And we know that there are huge portions of the NFPA 70 of the National Electrical Code that couldn't possibly apply to a compressor station. There are entire sections of that standard that deal with things like carnivals, circuses, fairs, that deal with motion picture television studios and special wiring issues for those. And so Judge Katsos, that's to the point that we submit that when an agency has simply said, we incorporate this standard for these purposes. Take the life safety code example that we gave, which applies the Veterans Affairs Regulation for veterans cemeteries, where the underlying code has provisions that deal with one and two story family dwellings and daycare centers. Can't possibly be the case, but what the agency is saying is, well, we've incorporated that. It's kaboom. We're just going to, you should, everybody in the world should assume that the entire document, cover to cover, has been incorporated by Go ahead. Suppose it's crystal clear. The incorporating statute identifies with precision the private standard incorporated, ASHRAE 100.2 or whatever it is. And then you look at that provision. And let's say it just conceptually has three different parts. One is the directly binding legal text, right? What we said would be essential to understanding legal obligations, okay? That's the first category. Second category is a safe harbor provision, right? It says if you do the following, you will be in compliance with the standard, okay? Maybe less essential, but it's a safe harbor. Yes. And the third category is explanatory material. It has, the private standard has findings. It has a statement of purpose. I had thought this whole dispute is about those second and third categories. And you say those can't fairly be copied. The dispute, I, is that fair? I understand your question. This is a conceptually, the answer is yes. It is with respect to, in the type of circumstance, with the type of IDR regulation that you described, it is with respect to, it is with respect to the other two categories. And wouldn't someone, wouldn't someone trying to figure out his or her legal obligations want to know all three categories? They would, they potentially would want to know the second category. I grant that on the question, although that is, as the point that this court made was that with respect to something like a safe harbor or a reference procedure, that something like a paraphrase might be, might be, might be more adequate. And that's one of the many showings that we made in the district court in terms of taking the court's opinion and trying to apply it to the record was to show that it was not necessary for there to be 100% verbatim copy. And then when you move. Mr. Klaus, let me, let me just, oh, I'm sorry. Finish your sentence. I was just going to, thank you, Judge Floyd. I was just going to say, Judge Katz, with respect to the third category, we think that it moves even farther afield in terms of what some of the, and the other, the other point that I would make, and it's a point that this court emphasized over and over again, five years ago, is that not all of these are created equal. And so what you have described as being in pocket three, Judge Katz, as informational material, there's a wide variety of that type of information material. Again, we did the work in the district court of trying to explain what, you know, how to separate, how to separate these matters. And what we instead, we're instead told by public resource, and it does appear that the district court accepted it, is as long as you can find an incorporated regulation that doesn't specifically carve out a particular section, then you are essentially, you're home free on the first three fair use facts. Now what about, who is you and for what purpose? I understand the problem, I believe, from SDO's perspective, which is if incorporation by reference is used, let's just say sort of broadly or sloppily, you know, I'm going to refer to the whole, you know, fire standards, and everyone who looks at them is going to know, you know, that they're supposed to go to the wood structures thing. But so I don't even, as the lawmaker incorporated by reference, I don't have the incentive to be very precise about it. Your problem is then, and then public resource is just looking at what the lawmaker said, because public resource is not, you know, a highly trained lawyer who's going to go through and carve out, you know, and edit away the non-necessary portion. They're just going to put up what the incorporation by reference refers to. But the problem from your client's perspective is when it's done in that sort of wholesale way, then you end up with someone who might want to, you know, publish things that your clients want to publish, and that is their work, and send it off, and it becomes a substitute even in the industry setting where, you know, electricians want to be doing things in a uniform way, and fire safety professionals want to be doing something in a uniform way. And so they're referring to these in a context that is distinct from the context of legally binding standards. Is that a fair description of sort of the... That is a completely fair description, yes. Okay, so the, but I've also flagged the difficulty of requiring somebody in the position of public resources to make the more fine-grained division. But so, if it were possible in the real world to say fair use applies to, you know, except what the district court did in terms of applying the fair use analysis to what the lawmaking authority referenced, and only that, right? And if we then were to apply the fair use defense only to uses of those standards by law, you know, when used as law, and say the fair use defense does not apply when enterprising publisher wants to scoop the fire codes and sell them at a, you know, undersell the owners of the work, that even though they found it on public resource, it is not fair use when it's not being used, sold, profited from in its role as law. I mean, it's conceptually that sort of, I'm wondering what, if that were a distinction that could be maintained, would it be accepted? Is that acceptable to you? It is. I think I understand the question, Judge Miller, that it would not be acceptable for the following reasons. One is that what public resource does not apply to the distribution of the standard. The second is that there is no limitation on the distribution of it. And to the point that it, to the point that, well, what about the people in the world who would need to see, maybe there is someone, although there is no record evidence of it, there's been 10 years of litigation and we have not had anyone come in and say, I wanted to debate one of these standards. I wanted to propose something. We don't have any of that. But if there were, if there were someone who said, I really need to have this, all of the standards, every one of them, cover to cover, is made available by the plaintiffs. I think you lost that argument on the first appeal. Is that not right? I mean, if that were enough, then the prior panel wouldn't have rendered the decision that it would. In this respect, I don't think that it's settled by the former, Your Honor, which is that there has to be an evaluation of what it is that, what it is that the defendant here is doing, but the effect, as you pointed out, the substitutional effect on the plaintiff's market is. And the fact that, and we think that it is relevant to the consideration, both to the degree of transformativeness and to the question of substitution. But is it a conceptual problem or a practical problem if public resource website were, you know, directed that it's to be used only to analyze or critique or refer to the materials insofar as they've been IBR'd, isn't that, isn't that an adequate limitation? If there were a, if there were a way to keep Jeannie, as it were, in the bottle, that would be, that would be a very different case, Judge Miller, and I think that it would be much harder. Why is there not a way to keep Jeannie in the bottle? I mean, why is that not the situation we face? Oh, there are, there are a couple of ways. There are a couple of ways for public resource to do some, some things. For example, what we had evidence in the record that the Internet Archive, which is where they post all of their material, that they have a borrowing or a checkout function. And so someone unlike a, a Napster for the standards world type situation where anybody can go and take something down, that there is a, that there is a function where you can, you can put a checkout on. The book is taken out. The book is, book is taken back. Similarly, with respect to the site in here, there is a function on the Internet Archive that provides for encrypted copying of, for encrypted copies, and that they will only be used by persons who have, who have, who have site in here. There are those, those mechanisms were available and public resource doesn't use them. So I would agree with you, Judge Clark, it would be, it would be a much closer, a much different case if what there was, if, if, if what we had in the sense was public resource operating speaker's corner and nobody could take the standards with them when they left speaker's corner after listening to them explain. Or somebody who wanted to research them could go out and do that in some way. But again, that's not the, that's not the situation that we have with respect to the defendant's use. Right. Well, they want to be able to make it easy for people, have free access. And I mean, I take it the problem is if, if they really were using it only for legal analysis, legal, you know, compliance, that could be on the fair use side. The difficulty is, is in the implementation of that line. I mean, what if you found that, do you understand anything about the first panel's decision to prevent you from pursuing someone who did what I was referring to before? Downloaded the full fire code because it's been IVR'd in full, bound it up into a book and sold it in competition with your client to, you know, firefighting professionals who are not worried about complying with the law, they're worried about, or construction professionals who are worried about, you know, making good buildings that aren't, aren't going to burn too easily. That you could still pursue that as not fair use under, under the ruling of the, of the first panel? Well, unfortunately, Judge Millard, the way that the, the way that the internet works, we had evidence that we submitted, is that the people who can download these are, we don't have any record of who they are. Very deliberately, public resource does not keep track who downloads their works. And so we don't know, for example, who the people are who with respect to the 2017 version of the National Electrical Code, who downloaded that work, or accessed that work, either via view or download something like 40,000 times. We don't have, we don't have a record of it. And we do see, as, as we put into the records, evidence of some people actually reselling, reselling things on a site like Scribd. And part of the lesson, frankly, not just from this case, but from 20 plus years of cases involving distribution of copyrighted works on the internet, is that you don't want, is that it's, it's unfair to put the copyright owner into, into having to play a game of whack-a-mole. I have a much more specific question for you, which is, if, if we were to agree with you that the district court misstated the burden on market harm, can you spell out how, if at all, it affected the summary judgment determination? And in particular, is there any way that your clients relied on what you say is the appropriate burden allocation to somehow hold back on developing or presenting evidence of market harm? We did not. So we did, we, we did not hold back on developing evidence of market harm. That said, Judge Miller, we think that it's clear that it was the, the allocation of the burden was wrong, as we've said. And we also think that regardless of who has the burden or where it was, at a minimum, we presented a triable question of market harm. So you're saying just looking, you know, putting the, bracketing the burden question on the record, you've made a case that, that prevents summary judgment? On the record. And I, and I'll just pick up on the point that I was just describing to your Honor, Judge Clark, where I said that there were these copies that we know are public resource copies. Because when you go to the Scribd website, what it shows you is the first page. And the first page is not, yeah, what the, the title of the ASTM standard. The first page is public resources, stars and stripes and, and, and, and, and, and all that, and all that page. And it's there. And what the district judge said about that, at page 32 of the memorandum, was that there was no causal connection between public resources distribution and these third, and these, these third, these third party sales. And there were numerous other, there were numerous other pieces of evidence that we had, Your Honor, that we think clearly add up to, at a minimum, again, a triable question of fact on, on market harm. I think we're finished on that. So two quick questions. One is, in the government edicts context, the Chief Justice expressed concern with having a dual system where some people have the coach version of the law and others have the first class version of the law. And that was in the context where the coach version was everything with the force and effect of law. And the first class version was the annotations, which under Georgia law had no force and effect of law. Isn't that concern present here and even greater because my coach version is you just get the directly controlling text and the first class version is you get the safe harbors and the explanatory material. I completely understand the point Judge Gatsas and I would say no, because I think the interests on the other side are different. The interest that, the interest of the Chief Justice was responding to was a series of arguments that Georgia made for saying, as you have pointed out, that the line should be drawn at what has the, what has the force of law. And I think what that, what, what that said is there's no need to get into that here because we have these straightforward authorship rules and it would, and it would cause a lot of, and it would cause a lot of difficulties. Whereas I think the interests in this case are different because the standards are privately authored. And I guess I would just quibble just a little bit saying the interest of the public in knowing the law are the same, but you might have more on the opposite side of the balance. Well, except for the fact, except for the fact, that we, again, we made all of the, all of the standards available online. That's one thing. And the second thing is that you have a multi-decade process of, you know, frankly, the political branches of the Congress, the administrative agencies, considering the argument and balancing the question, which really what this comes down to, Judge Katsos, is a balance between providing the incentive for this, what no one denies is incredibly important work to be done and providing access, which is done through the reasonable availability standard. Last one for me, which is you have flagged what seems to be a problem of, I'll just call it overbroad IPR. And the case that sticks in my mind is the regulator wants to address treating veterans' cemeteries and they incorporate, you know, whatever. The question is, would you be able, when this, the standard has to be formally incorporated through notice and comment rulemaking. And you've cited a lot of authority suggesting Congress wants the copyright to be respected somewhat. So in a case like that, could you, I assume your clients could come into the IBR rulemaking and argue that the proposed incorporation is arbitrary and capricious because it's overbroad? Is there any reason why you couldn't do that? Well, I guess a couple of reasons. One is our having notice of it. And while that is, while that is essentially a, I don't know what the manageability of that would be at the federal level, just in my response to what Judge Katz has, we also face the problem that it occurs at the state and local level as well. And the idea of putting the burden on to the standards development organization, essentially, you know, a radar on what can be done in any jurisdiction we think is too much of a burden. Is there any mechanism to make that argument later? I don't know, petition for unincorporating? I probably face a pretty tough stand. I would, off the top of my head, Your Honor, I don't know the answer. And again, I do think we, I do, and I also think... I take your point about notice. Thank you. Thank you. Your Honor, I'm substantially over my time. I'm happy if the court has other questions. We'll give you a couple of minutes and reply. Thank you. And also, Your Honor, Mr. Fee, who represents ASTM, is here and was available if the court had any ASTM-specific questions. But if not, I'll just come back and propose. Thank you. Thank you, Your Honor. Thank you. Excuse me. Good morning. May it please the court. As has been mentioned a few times, this is our second round up here. But the court question has not changed. And the court question is, can my client, public resource, an entirely non-commercial entity, provide the public? And by the public, I mean citizens, I mean advocates, I mean journalists, and even courts with unfettered access to the law. And the answer to that question is still yes. Whether it's a tax code or the building code, public should be able to access, explore, comprehend, and teach the law. The last time around, I thought there was a pretty straightforward question with a pretty straightforward answer. But Judge Tatel's opinion for the court was a lot more complicated than that. Well, I still think it actually boils down to a pretty straightforward question and answer that was reflected in how the district court interpreted ACM-2 and applied it. I mean, he was very specific in saying that IBR can have different consequences. And he did seem to distinguish the three categories I laid out. The directly binding legal text is different from the safe harbors and the explanatory material. So the opinion does draw some distinctions there. It never draws a categorical distinction to suggest that it creates a spectrum. But as we interpreted it, and I think as the district court interpreted it, when you're trying to look for what is a binding obligation in this context, it's fair to look to the incorporating language. And if you think about it as a practical matter, that's what normal people would look to. You look to the APA and the CFR to lay out how to go about incorporating by reference. And agencies then follow that procedure. When they follow that procedure, they've created a binding legal obligation. And putting people like my clients or anybody else in the position of having to second guess that decision creates just a morass. That makes a lot of sense to me. But it also, you know, the opposing counsel's argument also makes a lot of sense that the authority, the government officials that are incorporating by reference don't really have an incentive to slice this as finely as perhaps they should. What's your response to that? I mean, you have to appreciate that in your mission, which I understand to be about the law, it is only a subset of materials that the development and use of which is within their mission, which is, you know, much more generally coming up with useful standards that are, you know, many of which may never touch law that have to do with best practices. So if the hosting ends up needlessly because of, you know, sloppiness on the part of the incorporators by reference, needlessly impinging on their distinct project, what's your response to sort of how that should be dealt with other than as they propose, that PRO go through and distinguish between necessary and binding and other. And what are the other reasons that the reason it doesn't do that is we look to... You look at what the legal authorities themselves have specified and you don't second guess that. And also what people such as the administrator of the National Institute of Standards and Titles rely on and how government agencies think about it. But to get back to your question, so again, we only post the standards organizations post and create many, many thousands of standards. We only post what has been specifically incorporated by reference into law via notice and comment proceeding in the context where Congress has delegated to regulators, lawmaking authority. So that's the small universe of what we look to, usually all the standards in this case have been superseded already. They're no longer standards at standards, they're updated versions. And that's really what the organizations focus on, but we focus on the subset. The second thing though is... Stan, just a little question for information. Maybe this is really for the other side, but I forgot to ask, is it not common to incorporate in a, what one might call a dynamic way or say the latest version of, you know, ASTM such and such? No, usually you incorporate a very specific version and that might be updated over time, but often there's a lag between an updated and the incorporation process. Yep, got it. And, but, so two more points directly to your question. One is that agency regulators are actually, regulators are capable of identifying when they only need a specific section. They're capable, but they don't always do it. They don't always do it, but they do do it. So it's not like they don't know how, they do know how. And they're supposed, that is what they're supposed to do. So I'm sorry if they don't always do that, but it's difficult for an ordinary citizen to know, because I can guess the mind of the regulator. And the second thing is, I think that the, we know that standards organizations work very closely with government. In fact, like the notion of surprise, particularly incorporated in federal law, it strikes me as disingenuous at that. So there's evidence in the for example, ASTM is very proud that 93% of its committees have participation of government employees. There's really some agencies are actually mandated to work with the private organizations in the development of these standards. So I think the idea that there might be a surprise is unlikely. And so really not a genuine, a genuine worry. I have a specific question for you about the market harm factor. Before the district court, you argued that the plaintiffs bore the burden of proving market harm, and the district court followed your suggestion to announce that when a defendant uses the copyrighted work for a non-commercial purpose, the court has placed the burden on the plaintiff. The show by Propaganda says some meaningful likelihood of future harm exists. They're quoting Sony. If we were to disagree, I mean, after all, ordinarily the burden is on defendants to establish an affirmative defense. And some of the circuits have been explicit that the defendant bears the burden of establishing a lack of market harm. So, you know, if we wanted to avoid a circuit split, how and could we affirm what the district court did here in view of, you know, by assuming, I mean, we haven't decided this issue, but assuming we were to decide that that was an error of law, could we still affirm? Yes. So, for two reasons. One is I would just point out that two other circuits have said that. I understand that. I'm sorry, two other circuits you say have said that it's the plaintiff's burden, although is that? Well, just to be clear, what Sony stands for is not an entire shift burden. What Sony says is when a use is entirely non-commercial, like the one here, the plaintiff should be able to come forward with some evidence, not entirely shifting the burden, but rather they should be able to come up forward with some evidence. And the plaintiffs were not able to do that. But also, even that aside, even if we disregard Sony, we met our burden. As best you can prove a negative, we came to court, we submitted evidence of testimony from their own executives saying we actually can't track any real evidence of harm. Their own expert simply relied on the self-serving statements of their executives. And we also showed, just one more point, that we also showed that with respect to ASTM, their sales were up. With respect to NFPA, their sales have been, they said they're cyclical and they were falling as of 2006, which is long before public resource was doing anything. So we brought evidence to the table. You say they were unable to come up with some evidence. They point in their reply brief to the drop in NFPA's publication sales. And they point to 42,000 downloads of reposted works following this court's 2018 opinion, in this case vacating the injunction. So they're pointing to some pretty specific things that they've calibrated kind of date-wise to the availability of duplicate or similar versions. How do you respond to that? I mean, why doesn't that create a tribal issue? So two reasons. One is that I think that they provided some evidence, and I think that the district court reviewed it carefully and said this is just inadequate. And I think frankly, she was a little disappointed that this far into the litigation, the plaintiffs who have unlimited access to their own market data, couldn't provide some more empirical, quantifiable evidence than they did. So I think that's part of what happened. The other thing is, I would just point out, this is a fair use case. It's also a copyright availability case, but we'll see if we get to that. But on fair use, you don't just look at one factor. You look at all four factors and consider the purposes of copyright. And secondly, with respect to market harm in particular, the Supreme Court has told us that when you think about the market harm, you don't just look at numbers. So that's important. But you also have to look at the public interest and weigh it against the need for copyright incentives. And one of the things we know from the back court, and we've also heard it from scholars since, is that if there were ever an area where there was less of a need for copyright incentives, it's this one. These standards are created in terms of the actual work done by volunteers who are just excited about making best practices for their industry. Government employees get in the mix. Lots and lots of people come together. None of those people are doing the work because they're looking for royalties. But I gather, and you don't question, that the institutional infrastructure to bring those together and to track their work and to publish its product, I mean, there is an institution here. You can't say that it isn't expensive, for example, to run a university even though, you know, the faculty are, I mean, it's not just faculty salaries. And so when these folks are coming together and aren't being paid, there's still a lot of sources necessitated. Well, that's correct. But there I would point out that one of the things you have to think about in a copyright case, when you're thinking about market harm, is you have to think about copyright harm. And we know, going all the way back to Feist, that simply investing labor as opposed to creativity does not a copyright make. Again, I'm in no way discounting the value of the work. I am simply saying that I think part of the calculus has to be, how much is a copyright when most of the people who are doing the actual creative work here are people who are volunteers? I have a couple other points to make if I might, but I don't want to answer those questions. Okay, so I just want to say that I do think that the Supreme Court, I'm sorry, the District Court, I think really actually did look at every standard individually as she was supposed to do. She thought carefully, as this court said, about the legal status of the works by looking at the incorporating language which we provided to her. And, excuse me, but she was also prepared to consider what would be necessary to comprehending a legal duty, which this court also alluded to. And I think after Georgia, at least we know that is a good idea, appropriate for a court to do. And that's what she did. And so, you know, and she looked at all four factors together, rather than applying them in a mechanical way, which is what she was supposed to do. So I think on balance, this is a really one of excellent fair use analysis, as we've seen, though, particularly when you've got 200 standards below you. She said not fair use. She ran the other way. She went standard by standard, distinguished among them in various ways. And she was very careful to figure out what was or wasn't incorporated. But at the end of the day, she applied a per se rule that whatever was IBR can be copied. I think she applied a bright line rule that looks to what is legal. At least by your client who is doing this for non-commercial purposes. Correct. Exactly. I mean, there is a whole other context of the other factors. But I think she did apply the rule of what is a binding regulation and what is not. And the APA. Yes, but binding understood in its broad sense of what was incorporated into law, as opposed to the narrow sense of what is the precise operative text that establishes the obligation. Well, actually, I think your honor that she applied not just what was binding, but also what would be necessary to comprehend what was binding. But actually, she really can go back to when a regulator in the agency issues a regulation pursuant to the APA, follows all the rules, that whole thing, pursuant to its lawmaking authority, that's law. That makes a lot of sense to me. I guess it's just an open question whether it's consistent with the panel opinion. Yeah, I think it has to be. But also, because remember, the panel opinion said there's a spectrum here. And allow for some flexibility. It actually didn't itself assign such a bright line goal. What do you... Go ahead. I didn't mean to... One more. What do you do with this phenomenon that I described as overbroad incorporation? The regulator wants to get at the cemeteries and ends up incorporating something about apartment buildings. Well, I think... They just out of luck? Well, I think what happens in advance is SDOs probably normally would work a lot more closely with the regulators to prevent that. And I think going forward, they're concerned about it. They can do that even more aggressively. We know that, yeah, they communicate with regulators all the time. So that is something that can be addressed. But I think most importantly, again, for purposes of this case, is a non... Any little nonprofit in Mill Valley can't possibly have been in the position of trying to figure that out in advance. But again, it's trying to actually do something I think we can all agree is a lot of more important and beneficial to the public interest. And related to that, I just want to have one more note on the reading rooms. Because I think it's important that the reading rooms provide very limited accessibility. Public resource does something very, very different. It's in itself a repository, not a gate. But you don't have to give public resource your home address and sign up for spam. And you can link, you can search, you can cross-reference. And we've got evidence from multiple amici saying this would be really valuable. We would like this. Sonoma County would like to be able to have an integrated code so that people could really understand all the different codes that affect their conduct. Copyright standing in the way of that, that I think is not good for the public. You haven't mentioned your government edicts doctrine. You opened your brief with it. If you were correct that it applied, wouldn't that remove copyright protection more categorically than the district court judgment did here? Well, our argument is that, and this was kept open in the first opinion, is our argument is that if the court decides that we have event fair use with respect to any standard at issue before the court, then it would be wise at this point to reach the copyrightability question and basically save other people from having to roll the dice on a fair use defense, as Justice Roberts put it in the first case, I'm sorry, in Georgia. And there, and it also feeds back into the fair use argument, because one of the themes of that case, of that opinion, is the animating principle behind all of this should be that no one owns the law. And that was the animating principle behind Georgia. Now I will admit that applying Georgia here requires a bit of an extension, but not much of one. Again, because as I said, when a regulator uses its lawful authority to issue a binding regulation, it's creating law in the same way. And when it incorporates other texts into it, incorporating making part of the law. So you sort of see that, I mean, that's a little bit how I understand that I'm on court in beak that, you know, I think they made a fair use holding, but they were adverting to the government edicts kind of ethos in so doing. So you don't think that the government edicts doctrine would yield a broader ruling than what the district court made under fair use? So I think what the government edicts doctrine does is it's an alternative path of affirming the judgment below. And that's really the question is the court is supposed to look to the judgment, not just the reason. This is an alternative reason to affirm that judgment. If we rest on copyrightability, the incorporation would vitiate the copyright as to everybody. It'd have a commercial competitor coming in, selling stuff. Well, then I think you have questions about how that commercial competitor was operating, what they were doing with it. And I also don't think that's very likely. If the incorporated material loses its copyright protection on incorporation, none of that matter. I mean, one major part of the analysis here is the non-commercial nature of your client's particular use. You can't account for that under copyrightability. Right. So what I think would happen is not, well, I just don't think that would happen because standards organizations don't operate that way. They compete actually for No, but I mean, but your answer to Judge Pillard's question has to be yes. And if it is, I mean, I think that Judge Cassis is entirely right, that it does yield a broader, it would remove copyright protection more broadly. And then I wonder, since you didn't cross appeal, if that's even before us, because it isn't an alternative route to defending the judgment, I think it would yield a much broader judgment. I think you'd still end up in the same place with respect to the 182 standards that are absolute as a matter of law, because that's what's at issue here. It's just these standards. No, but it's the nature of these standards. I mean, I gather under the district court's holding that they still have copyright protection with respect to other non-law, you know, as law uses. Right. Well, I think under the fair use approach, that would be correct. That's what I'm saying. So it's a very different judgment if it's under government edicts, because as Judge Cassis was just saying, that would vitiate the copyright boom altogether. So another way of thinking about this is that what happens when a work is incorporated into law is that essentially you have now a branch. So you have a different work. You have the private version of the work and you have the government edict version of the work. So that's your, you would basically say, no, this actually, the result under government edicts would track the result under fair use. It would just be a different analysis to get a more direct route to get there. Correct. All right. Exactly. All right. There are no more questions. Thank you. Thank you. Mr. Klaus, why don't you take two minutes? Thank you. Just a few very brief points. One is the suggestion was made that there's not reason to worry about commercial competitors in this space. As we pointed out in our papers, we, my client, the NFPA, is already engaged in litigation in California against a commercial competitor that is doing what public resource is doing and is trying to claim the benefit of the fair use defense and making the copyrightability arguments. So they are out there. There is a, there was a suggestion that was made by public resources council that there is closeness between the SDOs and the administrative agencies. I think there was a, there was a suggestion that ASTM people are in Washington posting about their relationship with the government agencies. And so there's nothing to worry about their ability to monitor what's, what's going on and what's being IVRed. There is, there's no evidence of that. The actual record evidence that's in the case is from Mr. Thomas's declaration, which is at page 699 of the joint index, which is that ASTM does not lobby or its standards to be IVRed. There was also the, there was also a lot of discussion about market harm and the claim that there was nothing that that we essentially had nothing. We have substantial amount of evidence that you had pointed out, Judge Hillard. The other thing that I would say to point that the standard for harm is whether not just what public resource is doing would cause harm, but whether everybody was doing this in a widespread unrestricted way. And the other, yet the last point I'll make is that the standards were down from public resource, not just during the time period that the injunction was in effect, but they actually took them down in November of 2015. And since the time that the injunction was vacated by this court, public resources posted just one standard, the 2017 version of the National Electrical Code. And so we don't actually have a, we don't actually have a real time example of what would happen if they put the 2020 or 23 National Electrical Codes online as well. We don't know. And so in some respects, the reason that the evidence of harm and calculating specific harm has been difficult is because of choices of public resources. But they're reflecting choices of legislators. And one of the points that they make is that typically legislators are a couple of steps behind your clients in that they do incorporate by reference particular date issued standards. And as your working to improve the substitutability of what's incorporated by reference, you know, it quickly is sort of diminished, given that you're on the edge of progress and the legislators are always a couple of steps behind. The only thing I would say is that with respect to what has actually been posted hours in showing market harm, I don't think that, I think that one needs to consider that there are huge numbers of standards that our clients develop that have been IDR'd from the time the injunction was lifted, but they have not been put back up. So what we've got is a record that is based on some of the... A little bit of a pause. Yes. Let me ask you about that. You mentioned the... Do you have a sense of the proportion of the work of these three SDOs that is and is not IDR'd under the district court's definition where if a standard in full is referenced, even if, you know, you would say that some smaller portion of it should be fair use, but if, you know, in terms of the unit size that the lawmakers reference, what proportion of your clients works in total is IDR'd? I do not have that information at the top of mind for my client. Mr. Fee may for ASTM. ASHRAE has the standard with 90.1. That is a much smaller number of work. What I would say, Judge Pillard, is that the works that are issued here account for an outsized huge portion of that publication revenue is responsible for most of the activities. And I see Mr. Fee, Judge Pillard, Mr. Fee may have a more specific answer on ASTM. Yeah. Your Honor, I do know the answer to your question with respect to ASTM. Approximately 10% of ASTM standards are incorporated by reference into federal regulations and that's at J.A. 699. J.A. 699. Yes, Your Honor. Thank you. Is there anything else for Mr. Klaus? Pardon? Is there anything else for Mr. Klaus? All right. Any more questions? No. Thank you. Thank you, Your Honor.
judges: Henderson, Pillard, Katsas